[Crim. No. 39833. Second Dist., Div. Five. Aug. 24, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
ADRIAN ULYSSES PATRICK, Defendant and Appellant.

COUNSEL

Hugh Peter Bavaro, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Edward T. Fogel, Jr., and Richard L. Walker, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**STEPHENS, Acting P. J.**—Defendant was charged with violating Health and Safety Code section 11351, possession of cocaine for sale, and Health and Safety Code section 11377, possession of phencyclidine (PCP). After motions under Penal Code sections 995 and 1538.5 were denied, defendant entered a guilty plea to the Health and Safety Code section 11351 charge and the other count was dismissed.

At approximately 9:45 p.m. on October 18, 1980, two police officers drove up to 1240 California Street in Long Beach, stopped their car and exited it. At that location some 15 to 18 persons were in a gathering. The officers knew the area and location as one where many drug transactions had occurred. However, no criminal action was observed as the officers approached the group.

Officer Houser had been informed that defendant was a heavy dealer in cocaine. Officer Houser was acquainted with defendant and defen-

dant with him. Defendant saw the officer approaching and at that time defendant had his right hand at the center of his belt. Defendant stared at the officer, then bolted from the group and Houser gave chase. Houser concluded that defendant was engaged in some type of criminal activity and was trying to flee contact with the officer. While Houser was chasing defendant and within a few feet of him, defendant threw two objects over the fence. About 50 feet from where he threw the objects, defendant was stopped and the objects retrieved. The objects retrieved included a PCP cigarette and a clear plastic baggie containing 12 rolled-up balloons of cocaine. The sole question raised on appeal is the admissibility in evidence of the narcotics discarded by defendant. Defendant argues that the evidence was obtained as a result of a threatened detention and is inadmissible. Assuming, arguendo, that defendant could not legally have been detained prior to his discard of the contraband, was the evidence sought to be suppressed (and which constitutes the foundation of the charges) arrived by exploitation of an illegal detention? The answer is in the negative.

We are confronted by opposing authorities, *People* v. *Robinson* (1976) 58 Cal.App.3d 363 [129 Cal.Rptr. 915] and *Restani* v. *Superior Court* (1970) 13 Cal.App.3d 189 [91 Cal.Rptr. 429], as against *People* v. *Menifee* (1979) 100 Cal.App.3d 235 [160 Cal.Rptr. 682]. *In re Tony C.* (1978) 21 Cal.3d 888 [148 Cal.Rptr. 366, 582 P.2d 957] cites *Restani*, but expands the discussion of detention.

In *Restani, supra*, 13 Cal.App.3d at page 198, the court held that "if the prosecution can establish that the primary illegality was not a *sine qua non* or indispensable cause of the discovery of the physical evidence . . . the exclusionary rule does not apply." In *Restani* defendant was not under arrest during his detention and at no time was there any indication the officer was going to conduct a search. The court then concluded that the consent to search was not compelled and hence not contaminated with the illegal detention. In *Menifee, supra*, 100 Cal. App.3d at pages 238-240, the court held that defendant abandoned the contraband (when the officer was about to overtake him) as a result of a *threatened illegal detention.* By this holding, we read *Menifee* as inferring that an illegal search would have inevitably followed the illegal detention. We cannot subscribe to that rationale.

In the instant case, when defendant decided he was about to be detained, he eliminated any question about an illegal search by openly disposing of the contraband (tossing it over the fence). The contraband

was therefore not an indispensable product of a detention, but an abandonment, and was properly seized.

*People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 469 [103 Cal.Rptr. 243, 499 P.2d 499], is supportive, for there defendant and his companions were observed at night in a high crime area. The police gave chase and observed the discard of the evidence. The court stated: "Defendant was observed late at night in a commercial area where there had been a high incidence of burglaries. His only inducement to flee, insofar as appears, was the appearance of a marked police vehicle and police officers who took notice of defendant and his companions. In no way could defendant claim that the officers infringed any right which induced defendant's actions. (Cf. *Cunha* v. *Superior Court* (1970) 2 Cal.3d 352 [85 Cal.Rptr. 160, 466 P.2d 704].) Nevertheless he fled and in doing so discarded evidence which, together with the flight and other circumstances, would necessarily lead a prudent man to conscientiously entertain a strong suspicion that defendant and his companions had committed a burglary. (See *Beck* v. *Ohio* (1964) 379 U.S. 89, 91 [13 L.Ed.2d 142, 145, 85 S.Ct. 223]; *People* v. *Talley* (1967) 65 Cal.2d 830, 835 [56 Cal.Rptr. 492, 423 P.2d 564].) Although the officers were thus armed with probable cause for his arrest, defendant was only detained while the probable burglary was further investigated. An officer's conduct in detaining even where it invades privacy is reasonable where he can point to 'specific and articulable facts' which, taken together, reasonably warrant the intrusion. (*Terry* v. *Ohio* (1968) 392 U.S. 1, 21 [20 L.Ed.2d 889, 905-906, 88 S.Ct. 1868] ....)"

In the instant case the trial court necessarily found that there was no detention until after the defendant discarded the contraband. "Whether there was a threat of an illegal search capable of being carried out was a question of fact to be determined by the court in the light of all the circumstances." (*People* v. *Stout* (1967) 66 Cal.2d 184, 192 [57 Cal.Rptr. 152, 424 P.2d 704].)

Defendant argues that he was "threatened" with detention at the time he discarded the narcotics and, therefore, the contraband must be suppressed from evidence because it was the product of an illegal "threatened physical restraint[s]." Defendant cites *People* v. *Menifee, supra*, 100 Cal.App.3d 235 as being on all fours with his case but, as indicated previously, the trial court apparently assumed that an illegal search would have occurred.

Defendant also cites *Badillo* v. *Superior Court* (1956) 46 Cal.2d 269 [294 P.2d 23] and *Gascon* v. *Superior Court* (1959) 169 Cal.App.2d 356 [337 P.2d 201] to support his theory of coerced abandonment of the evidence. His reliance on those cases is misplaced. As this court said in *People* v. *Robinson, supra,* 58 Cal.App.3d 363, 366: "In *Badillo* there was a *completed* invasion of constitutional rights by police officers who illegally broke into a home. The suspect fled the home after the illegal entry and disposed of contraband. (See *People* v. *Stout,* 66 Cal.2d 184, 191 [57 Cal.Rptr. 152, 424 P.2d 704], distinguishing *Badillo*; see also *People* v. *Prendez,* 15 Cal.App.3d 486, 488-489 [93 Cal.Rptr. 180].) In *Gascon* the officers unequivocally told the suspect they were going to search him. (See *People* v. *Stout, supra,* at p. 192, distinguishing *Gascon*; *In re Michael V.,* 10 Cal.3d 676, 682 [111 Cal.Rptr. 681, 517 P.2d 1145].) [¶] In this case Deputy Walsh did not tell defendant he was going to search him. He merely requested defendant to place his hands on the vehicle. ..." (Original italics.)

Thus, as stated in *Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 455, 83 S.Ct. 407], "the more apt question in such a case is 'whether, granting establishment of the primary illegality [here an *intended* detention], the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.' [Citation.]" (See *Restani* v. *Superior Court, supra,* 13 Cal.App.3d 189, 197.)

We believe the rationale of *Robinson* is more realistic than that of *Menifee*. Even were we to conclude that defendant, here, was under the threat of an illegal detention, there is no establishment of the fact that there would be an illegal search.

A defendant cannot immunize himself from damning evidence by discarding that evidence on his subjective assumption that an illegal search would follow his detention.

The judgment is affirmed.

Ashby, J., and Hastings, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 15, 1982. Newman, J., and Kaus, J., did not participate therein. Mosk, J., was of the opinion that the petition should be granted.