[No. G007926. Fourth Dist., Div. Three. Feb. 26, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
SCOTT FOSTER RAYBOURN, Defendant and Appellant.

COUNSEL

Marne A. Glass, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Steve White and Richard B. Iglehart, Chief Assistant Attorneys General, Harley D. Mayfield, Assistant Attorney General, and Steven H. Zeigen, Deputy Attorney General, for Plaintiff and Respondent.

OPINION

**WALLIN, Acting P. J.**—Scott Foster Raybourn appeals his conviction by guilty plea of violation of Health and Safety Code section 11350, possession of cocaine. He contends his detention and search were unlawful. We agree and reverse.

Tustin Police Officer Jeffrey Beeler saw Raybourn walking along the street at about noon on a summer day. Raybourn was wearing blue jeans, but no shirt nor shoes, and had a 35-millimeter camera hung around his neck. He was carrying a duffel bag and a grocery bag, and looked like a transient to Beeler. Raybourn appeared nervous and was looking over his shoulder as he walked. Beeler was curious, because Raybourn's appearance "didn't fit the camera."

Beeler, who was in plain clothes and driving an unmarked vehicle, watched Raybourn enter and then leave the office of a nearby gas station.

He approached Raybourn with his window down, identified himself as a police officer, and said he wanted to talk. Raybourn ran, jumped over a wall, tripped, jumped up and continued to run through a car wash parking lot. During the ensuing chase, Beeler again told Raybourn he wanted to talk and Raybourn responded, "Prove it." Beeler then showed Raybourn his badge, and Raybourn stopped, dropped his possessions, and assumed a spread-eagle position against a block wall.

While Beeler was summoning additional officers, he saw Raybourn reach into his left front pocket. He told Raybourn several times to remove his hand, and Raybourn finally did, handing him a paper bindle, later determined to contain cocaine. Raybourn was placed under arrest.

■ Raybourn contends the officer had no cause to detain him. Since the facts are undisputed, we make the determination as a matter of law. (*People v. Leyba* (1981) 29 Cal.3d 591, 596-598 [174 Cal.Rptr. 867, 629 P.2d 961].) "It is now settled that 'in order to justify an investigative stop or detention the circumstances known or apparent to the officer must include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or about to occur, and (2) the person he intends to stop or detain is involved in that activity. . . .' [Citations.]" (*Id.* at p. 597.)

■ "Although specialized knowledge may render suspicious what would appear innocent to a layman, the test remains whether the circumstances would ' "warrant a man of reasonable caution" '—who possessed such knowledge—' "in the belief" that the action taken was appropriate. . . .' " (*Cunha v. Superior Court* (1970) 2 Cal.3d 352, 358 [85 Cal.Rptr. 160, 466 P.2d 704], quoting from *Terry v. Ohio* (1968) 392 U.S. 1, 21-22 [20 L.Ed.2d 889, 88 S.Ct. 1868].) This determination must be made recognizing "it is the right of every person to enjoy the use of public streets, buildings, parks, and other conveniences without unwarranted interference or harassment by agents of the law. [Citations.] 'A police officer may not use the authority of his uniform and badge to go around promiscuously bothering citizens.' [Citation.]" (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

■ Here, all Beeler saw was a somewhat nervous person who appeared to be a transient walking on a public street in broad daylight with a camera around his neck.[1] Neither of the minimally significant factors of "nighttime"

---

[1] The officer said Raybourn looked like a transient but did not provide further explanation of what he meant by that term. The jet set is, by definition, transient. All Beeler had to go on in making his assessment was Raybourn's appearance. From the record, he could have been describing any one of numerous younger persons seen on the streets and beaches of the south-

or "high crime area" was present. (*People* v. *Bower* (1979) 24 Cal.3d 638, 645 [156 Cal.Rptr. 856, 597 P.2d 115].) ■ Mere nervous, furtive, or evasive conduct in the presence of police will not justify a detention. (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 479 [198 Cal.Rptr. 538, 674 P.2d 240]; *People* v. *Bower, supra*, 24 Cal.3d at pp. 647-648.) ■ What remains is Beeler's conclusion Raybourn "didn't fit the camera."

■ Cases have long rejected a finding of cause to detain based upon "an 'inchoate and unparticularized suspicion or "hunch".'" (*United States* v. *Sokolow* (1989) 490 U.S. 1 [104 L.Ed.2d 1, 10, 109 S.Ct. 1581, 1585].); *People* v. *Bower, supra*, 24 Cal.3d at p. 644; *People* v. *Moore* (1968) 69 Cal.2d 674, 683 [72 Cal.Rptr. 800, 446 P.2d 800]; *People* v. *One 1960 Cadillac Coupe* (1964) 62 Cal.2d 92, 96 [41 Cal.Rptr. 290, 396 P.2d 706]; *People* v. *Henze* (1967) 253 Cal.App.2d 986, 990 [61 Cal.Rptr. 545].) In *People* v. *One 1960 Cadillac Coupe, supra*, 62 Cal.2d 92, the Supreme Court held illegal the detention of the defendant, who appeared nervous and "not [to] belong in the Cadillac" he was driving. (*Id.* at p. 96.) The rationale for such holdings lies in the interests set forth above: Citizens from *all* walks of life and economic stations must be given the same right to come and go freely without fear of police intrusion based upon the supposition they do not merit ownership of some piece of property they possess.

■ There are cases upholding detentions where the detainee possessed an item of frequently stolen property. But those cases all involved additional factors not present here. (See, e.g., *People* v. *Garcia* (1981) 121 Cal.App.3d 239, 245-246 [175 Cal.Rptr. 296] [men put a television set in an auto trunk in a burglary area and then walk away as police approach]; *People* v. *Perry* (1979) 100 Cal.App.3d 251, 262-263 [161 Cal.Rptr. 108] [three men abandon a television upon seeing an officer and walk away]; *People* v. *Myles* (1975) 50 Cal.App.3d 423, 430 [123 Cal.Rptr. 348] [man seen carrying a television set down the street in a high crime area]; *People* v. *Manis* (1969) 268 Cal.App.2d 653, 657 [74 Cal.Rptr. 423] [man seen in high crime area carrying a typewriter without a raincoat in a heavy rain].)

True, Raybourn fled when Beeler, in plain clothes and driving an unmarked car, identified himself and said he wanted to talk. But even assuming Raybourn believed Beeler was an officer,[2] he had every right to depart.

---

land, most of whom have homes and families of some means, but who seem to want to disguise that fact by their mode of dress. To the extent Beeler meant Raybourn looked like a homeless person, we eschew that observation as a ground for the seizure of a citizen. "The great bulk of transients are law-abiding individuals . . . in pursuit of employment." (H. A. Bloch, as quoted in Webster's New Internat. Dict. (3d ed. 1981) p. 2428.)

[2] Raybourn stopped immediately when Beeler first showed his badge which suggests Raybourn's true motive in running may have been simply to avoid the stranger who was accosting him.

He was faced with either a "consensual encounter" or a detention unsupported by sufficient cause. (See *Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 788-789 [195 Cal.Rptr. 671, 670 P.2d 325].) If the former, there was no legal restraint to prevent him from ignoring Beeler and leaving the scene. (*Ibid.*) If the latter, his departure could not provide the missing factual basis for a detention. (*People* v. *Aldridge, supra,* 35 Cal.3d at p. 479.)

When Beeler began to chase Raybourn to overtake and stop him, a detention occurred. (*People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1126 [236 Cal.Rptr. 840]; *People* v. *Menifee* (1979) 100 Cal.App.3d 235, 239 [160 Cal.Rptr. 682]; compare *Michigan* v. *Chesternut* (1988) 486 U.S. 567 [100 L.Ed.2d 565, 108 S.Ct. 1975].) At that point he had no more cause to detain Raybourn than when he first saw him. (*People* v. *Aldridge, supra,* 35 Cal.3d at p. 479.)[3]

■ The Attorney General argues that even if the detention was illegal, it did not taint the discovery of the cocaine, relying on *People* v. *Patrick, supra,* 135 Cal.App.3d 290, 292-293. But in *Patrick* the defendant *discarded* the contraband when he thought "he was about to be detained." (*Ibid.*)[4] Here, the cocaine only came to light after Beeler made repeated demands for Raybourn to remove his hand from his pocket. Whether Raybourn's production of the cocaine is regarded as a consensual act or a search, it was the direct product of the illegal detention. (*People* v. *Aldridge, supra,* 35 Cal.3d at pp. 480-481; see also *People* v. *Loewen* (1983) 35 Cal.3d 117, 122-123 [196 Cal.Rptr. 846, 672 P.2d 436]; *Wilson* v. *Superior Court, supra,* 34 Cal.3d at p. 791, fn. 12.) The cocaine should have been suppressed.

The judgment is reversed.

Sonenshine, J., and Crosby, J., concurred.

A petition for a rehearing was denied March 13, 1990, and the opinion was modified to read as printed above. Respondent's petition for review by the Supreme Court was denied May 17, 1990.

---

[3] *People* v. *Siegenthaler* (1972) 7 Cal.3d 465, 469-470 [103 Cal.Rptr. 243, 499 P.2d 499], cited by the Attorney General, is distinguishable. There, the defendant fled at the mere sight of police officers and discarded stolen property. (See also *People* v. *Patrick* (1982) 135 Cal.App.3d 290, 291-293 [185 Cal.Rptr. 325].)

[4] We have disagreed with the dictum in *People* v. *Patrick, supra,* 135 Cal.App.3d 290, 294 that abandonment of property is not the product of a threatened illegal detention absent a showing there would have been an illegal search as well. (*People* v. *Salgado** (Cal.App.).)