[No. A046244. First Dist., Div. Four. May 17, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID KHALIFE VERIN, Defendant and Appellant.

**COUNSEL**

Robert K. Calhoun, Jr., and J. Bradley O'Connell for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and Morris Beatus, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ANDERSON, P. J.**—Defendant David Khalife Verin (appellant) appeals a judgment, following his conviction by jury, for possessing heroin (Health & Saf. Code, § 11350).

## I. FACTS

On October 11, 1988, Officers Poehlman and Perez were working with a special drug enforcement unit in response to citizen complaints about drug activity in the Papago Court[1] area. At approximately 7:25 p.m. Poehlman received a radio transmission from another member of the unit describing two males leaving the Papago courtyard. Shortly thereafter Poehlman observed two men fitting the description exiting the area. Poehlman then radioed other available officers in the vicinity, describing appellant and his companion. He never indicated that they should be stopped.

Perez, who was in police uniform and driving a marked vehicle, received Poehlman's radio communication. Perez parked his car and got out. As appellant and his companion neared Perez's patrol vehicle, Perez stated, "Hold it. Police" or "Hold on. Police." Perez never activated the emergency lights nor displayed any weapons. Appellant's companion immediately stopped; however, appellant continued walking a couple of steps. Appellant then turned to his side, put his hand in his breast pocket, and dropped something. He then pulled out a cigarette and lighter, approached Perez and asked what was happening. Perez did not speak between the time he ordered the two men to stop and when appellant dropped the item.

Perez, believing appellant was trying to distract him, conducted a pat-search for weapons. No weapons were found. Perez then picked up the discarded item, discovered it was black tar heroin, and arrested appellant.

At the preliminary hearing Perez testified that when he ordered appellant and his friend to "Hold on" or "Hold it," they were not free to leave. He further testified that the only information he received about appellant was his description, and that he and his friend had just left Papago Court. When Perez observed them, they were merely walking down the sidewalk.

Appellant motioned to suppress the heroin under Penal Code section 1538.5, arguing that Perez detained him without any articulable suspicion that he was engaged in illegal activity. The trial court denied appellant's

---

[1] Papago Court refers to an area comprised of an eight- to ten-story apartment building complex, as well as other apartment buildings, duplexes, and single family homes.

suppression motion stating: "[M]y inclination at this point is to deny the motion. I think it's an awfully close question in this case, . . . [¶] I think certainly an officer has a right to say—address a citizen on the street and that's what Perez had done."

The jury subsequently found appellant guilty of possessing heroin. The sentencing court suspended execution of sentence and committed defendant to the California Rehabilitation Center.

## II. DISCUSSION

■ Appellant argues he was unlawfully detained when Perez commanded him to "Hold on. Police" or "Hold it. Police," and that the heroin must be suppressed as the fruit of that illegal detention. We agree and reverse.

Since the illegal detention claim is dispositive, we do not need to address appellant's contentions that the trial court erred in admitting the area's reputation for "drug activity," and in failing to state on the record its reasons for selecting the upper term.

### A. Officer Perez "Detained" Appellant

■ Since the evidence is uncontradicted, we must independently determine whether the facts support the court's conclusion. *People* v. *Leyba* (1981) 29 Cal.3d 591, 596-597 [174 Cal.Rptr. 867, 629 P.2d 961].) Under Proposition 8 we apply federal constitutional law, but utilize state law where it does not conflict with federal law. (*In re Lance W.* (1985) 37 Cal.3d 873, 886-888 [210 Cal.Rptr. 631, 694 P.2d 744].)

■ For purposes of Fourth Amendment analysis there are basically three categories of police "contacts" with individuals: "consensual encounters," "detentions" and arrests. (*Wilson* v. *Superior Court* (1983) 34 Cal.3d 777, 784 [195 Cal.Rptr. 671, 670 P.2d 325].) Consensual encounters result in no restraint of an individual's liberty whatsoever; hence, an officer is not required to have an objective justification to stop a citizen. Detentions are seizures of an individual strictly limited in time, duration, scope and purpose. These may be undertaken by the police " 'if there is an articulable suspicion that a person has committed or is about to commit a crime.' " (*Ibid.*, quoting *Florida* v. *Royer* (1983) 460 U.S. 491, 498 [75 L.Ed.2d 229, 236, 103 S.Ct. 1319].) ■ In the instant case, the trial court characterized Perez's command as a consensual encounter, merely addressing someone on the street; appellant maintains the contact constituted a detention.

■ Although there is no "bright-line" distinction between a consensual encounter and a detention, the United States Supreme Court has stated that "the police can be said to have seized an individual 'only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave.' " (*Michigan* v. *Chesternut* (1988) 486 U.S. 567, 573 [100 L.Ed.2d 565, 572, 108 S.Ct. 1975], quoting *United States* v. *Mendenhall* (1980) 446 U.S. 544, 554 [64 L.Ed.2d 497, 509, 100 S.Ct. 1870].) In *Chesternut* the court explained that "The test is necessarily imprecise, because it is designed to assess the coercive effect of police conduct, taken as a whole, rather than to focus on particular details of that conduct in isolation." (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 573 [100 L.Ed.2d at p. 572].) The objective nature of the analysis ensures that the Fourth Amendment protections will not vary with the state of mind of the particular individual approached. (*Id.*, at p. 574 [100 L.Ed.2d at p. 572].)

After applying this test in *Chesternut*, the court concluded that, under the circumstances, a police officer driving alongside the suspect did not constitute a detention; the conduct would not have communicated to a reasonable person an attempt to capture or otherwise intrude upon his freedom of movement. (*Michigan* v. *Chesternut, supra,* 486 U.S. at p. 575 [100 L.Ed.2d at p. 573].) Significantly, "[t]he record does not reflect that the police activated a siren or flashers; or that they *commanded respondent to halt,* or displayed any weapons . . . ." (*Ibid.*, italics added.)

■ While there is nothing preventing a police officer from addressing questions to people on the street (*Florida* v. *Royer, supra,* 460 U.S. at p. 497 [75 L.Ed.2d at pp. 235-236]), when an officer "commands" a citizen to stop, this constitutes a detention because the citizen is no longer free to leave. (See *People* v. *Bower* (1979) 24 Cal.3d 638 [156 Cal.Rptr. 856, 597 P.2d 115].) In *Bower*, as appellant proceeded through a passageway, a police officer ordered him to stop and turn around. (*Id.*, at p. 643.) The *Bower* court concluded the officer's directive to stop constituted a detention because it clearly "restrain[ed] his freedom to walk away."[2] (*Ibid.*)

In the present case Perez's intent to detain appellant is not relevant except insofar as his overt actions communicated this intent. (See *People* v. *Franklin* (1987) 192 Cal.App.3d 935 [237 Cal.Rptr. 840].) We find Perez clearly manifested his intent to detain appellant when he explicitly, unam-

---

[2] Even though *Bower* was decided before Proposition 8 and the *Mendenhall* line of cases, its reasoning survives any change in California's law on this issue. In *Bower*, the court held the demand to stop restrained appellant's freedom to walk away; hence, under *Michigan* v. *Chesternut, supra,* 486 U.S. 567, it constitutes a seizure because the officer restrained his freedom to leave.

biguously and authoritatively demanded that appellant and his companion "Hold it. Police." or "Hold on. Police." Significantly, Perez *commanded*, not *requested*, appellant to follow his order. (Compare, *United States* v. *Mendenhall, supra*, 446 U.S. 544 [officer requested appellant to follow him]; *Wilson* v. *Superior Court, supra*, 34 Cal.3d 777 [policeman asked defendant if he would answer a few questions].) Appellant reasonably had to comply with Perez's instruction.

Respondent argues that no seizure resulted because the police did not terminate appellant's movement. Respondent maintains that recently in *Brower* v. *County of Inyo* (1989) 489 U.S. 593 [103 L.Ed.2d 628, 109 S.Ct. 1378], a civil rights case, the United States Supreme Court adopted a rule requiring physical restraint before a Fourth Amendment seizure can be found. We conclude *Brower* does not compel this conclusion.

In *Brower* a fleeing suspect was killed when his car crashed into a road-block. The Supreme Court concluded the use of a roadblock constituted a seizure. Since the decedent in *Brower* unquestionably was physically re-strained, any discussion about a Fourth Amendment physical restraint re-quirement is dictum. Further, the court's reference to *Hester* v. *United States* (1924) 265 U.S. 57 [68 L.Ed.2d 898, 44 S.Ct. 445], was used to illustrate its statement that the term "seizure" could not be applied to an unknowing act, but must be the result of government means "intentionally applied." (*Brower* v. *County of Inyo, supra*, 489 U.S. at pp. 596-597 [103 L.Ed.2d at p. 635].) Indeed, if the court's dictum were interpreted as a new standard to test Fourth Amendment seizures, it would disrupt a long body of established Supreme Court precedent stating that no physical restraint is necessary to find a detention. (See, e.g., *Adams* v. *Williams* (1972) 407 U.S. 143, 145-146 [32 L.Ed.2d 612, 616-617, 92 S.Ct. 1921] [involving rolling down of vehicle window in response to officer's request denoted a "forcible stop"]; *Terry* v. *Ohio* (1968) 392 U.S. 1, 19, fn. 16 [20 L.Ed.2d 889, 905, 88 S.Ct. 1868] ["[o]nly when the officer, by means of physical force *or show of authority*, has in some way restrained the liberty of a citizen may we con-clude that a 'seizure' has occurred," italics added].)

We conclude Perez detained appellant when he ordered him to "Hold on. Police." or "Hold it. Police"; a reasonable person would not feel free to leave.

## B. *Appellant's Detention Was Unreasonable*

Since Perez detained appellant, the state bears the burden of justifying the seizure. ■ (*People* v. *Bower, supra*, 24 Cal.3d at p. 644.) "In order to justify a detention 'the circumstances known or apparent to the officer must

include specific and articulable facts causing him to suspect that (1) some activity relating to crime has taken place or is occurring or is about to occur, and (2) the person he intends to stop or detain is involved in that activity. Not only must he subjectively entertain such a suspicion, but it must be objectively reasonable for him to do so: the facts must be such as would cause any reasonable police officer in a like position, drawing when appropriate on his training and experience [citation] to suspect the same criminal activity and same involvement by the person in question.' " (*People* v. *Aldridge* (1984) 35 Cal.3d 473, 478 [198 Cal.Rptr. 538, 674 P.2d 240].) "[A]n investigative stop or detention predicated on mere curiosity, rumor, or hunch is unlawful, even though the officer may be acting in complete good faith." (*In re Tony C.* (1978) 21 Cal.3d 888, 893 [148 Cal.Rptr. 366, 582 P.2d 957].)

██ Here, Perez testified that the only information he received about appellant was that he was leaving the Papago Court area, the region under surveillance. When Perez observed appellant at approximately 7:25 p.m., he and his companion were merely walking down the street. There is nothing suspicious about two boys walking down the sidewalk (cf. *In re Tony C.*, *supra*, 21 Cal.3d at p. 897.), nor is 7:25 p.m. a late or unusual hour (see *People* v. *Bower*, *supra*, 24 Cal.3d at p. 645). Furthermore, it is well established that a high crime area does not alone justify detaining a citizen. (See, *People* v. *Aldridge*, *supra*, 35 Cal.3d 473; *People* v. *Bower*, *supra*, 24 Cal.3d at p. 644.) The " 'high crime' area factor is not an 'activity' of an individual. Many citizens of this state are forced to live in areas that have 'high crime' rates or they come to these areas to shop, work, play, transact business, or visit relatives or friends. The spectrum of legitimate human behavior occurs every day in so-called high crime areas." (*Id.*, at p. 645.)

In *Aldridge* the court concluded that the factors of nighttime, high drug activity in the area, and seeking to avoid police contact were insufficient to justify a detention, either separately or cumulatively. (*People* v. *Aldridge*, *supra*, 35 Cal.3d at p. 478.) In the instant case there are even less objective factors than in *Aldridge*; Perez made no observations of any facts that objectively suggested drug activity or any other criminal conduct had occurred or was about to occur. We find the detention to be unreasonable.

C. *The Seized Heroin Should Have Been Suppressed*

Appellant urges us to craft a "bright-line" rule that ANY abandonment following an illegal detention requires suppression as "fruit of the poisonous tree." (*People* v. *Salgado* (1990) 219 Cal.App.3d 405 [266 Cal.Rptr. 887]; *People* v. *Raybourn* (1990) 218 Cal.App.3d 308, 313, mod. 218 Cal.App.3d 841b.) On the other hand, the Attorney General argues that any abandon-

ment following an illegal detention is an intervening independent act breaking the causal chain between illegal police conduct and seizure of evidence. (*People* v. *Sesslin* (1968) 68 Cal.2d 418 [67 Cal.Rptr. 409].) The cases are in conflict, but we believe the weight of authority favors appellant; we agree with him that under these circumstances the trial court erred in refusing to suppress the heroin.

■ In determining whether the abandonment breaks the causal connection between the detention and the act of abandonment, courts look to whether the action was "sufficiently an act of free will." (*People* v. *Washington* (1987) 192 Cal.App.3d 1120, 1126 [236 Cal.Rptr. 840], quoting *Taylor* v. *Alabama* (1982) 457 U.S. 687, 690 [73 L.Ed.2d 314, 319, 102 S.Ct. 2664].) This determination demonstrates whether the evidence was brought about by exploitation of the illegality or, instead, by means sufficiently distinguishable to be purged of the primary taint. (*Wong Sun* v. *United States* (1963) 371 U.S. 471, 488 [9 L.Ed.2d 441, 445-456, 83 S.Ct. 407].)

■ Respondent argues the nexus between the illegality and the seized heroin is missing here because appellant fails to show that Perez intended to search him, as opposed to detain him. Respondent relies on *People* v. *Patrick* (1982) 135 Cal.App.3d 290 [185 Cal.Rptr. 325], and *People* v. *Holloway* (1985) 176 Cal.App.3d 150 [221 Cal.Rptr. 394], to support its position that an individual must rationally believe he is being threatened with either an arrest or search of his person, prior to discarding the evidence, to establish the nexus between the illegality and the evidence. We find that both *Patrick* and *Holloway* are distinguishable from the present facts.

In *Holloway* the officer's observations justified the temporary detention. After the officer *legally detained* the defendant, the defendant clenched his fist and attempted to throw something; the officer interfered and confiscated the contraband. The court's discussion about the admissibility of the contraband, had the detention been *inappropriate*, is dictum.

In *Patrick* the defendant was being chased when he discarded his drugs. The officer subsequently stopped defendant and seized the narcotics. The *Patrick* court characterized defendant's actions as an abandonment: "when defendant decided *he was about to be detained*, he eliminated any question about an illegal search by openly disposing of the contraband (tossing it over the fence)." (*People* v. *Patrick, supra,* 135 Cal.App.3d at p. 292, italics added.) The court noted, "In the instant case the trial court necessarily found that there was no detention until *after* the defendant discarded the contraband." (*Id.*, at p. 293, italics added.) Thus, in *Patrick*, only a "threatened" detention resulted. In the instant case Perez actually *detained* appellant *before* appellant discarded the heroin.

We find *People* v. *Washington, supra*, 192 Cal.App.3d 1120, is controlling authority here. In *Washington* the defendant discarded the evidence *after* the officer *illegally detained* him; the court concluded the evidence should have been suppressed. This district, Division Five, did not require appellant to also believe he was going to be searched. ■ Hence, whether appellant's act of discarding the heroin was an act of free will, we examine the following factors: " 'The temporal proximity . . . , the presence of intervening circumstances [citation], and, particularly, the purpose and flagrancy of the official misconduct are all relevant.' " (*Id.*, at p. 1127, quoting *Brown* v. *Illinois* (1975) 422 U.S. 590, 603-604 [45 L.Ed.2d 416, 427, 95 S.Ct. 2254].) ■ There is no question as to the proximity because just moments after Perez yelled, "Hold on," appellant discarded the heroin. (See *People* v. *Washington, supra*, 192 Cal.App.3d at p. 1127.) Further, since appellant discarded the heroin after Perez detained him, "the abandonment occurred while he was illegally seized and there could be no intervening circumstances." (*Ibid.*) Lastly, Perez had no objective reasons to detain appellant; it was clearly an "expedition for evidence in the hope that something might turn up." (See *Brown* v. *Illinois, supra*, 422 U.S. at p. 605 [45 L.Ed.2d at p. 428].) Accordingly, we conclude the heroin constituted fruit of the illegal detention. The trial court erred in not ruling the evidence inadmissible.

Further, we cannot find this error harmless beyond a reasonable doubt. (*Chapman* v. *California* (1967) 386 U.S. 18 [17 L.Ed.2d 705, 87 S.Ct. 824, 24 A.L.R.3d 1065]. The seized heroin comprised the entire case against appellant. (Cf. *People* v. *Minjares* (1979) 24 Cal.3d 410, 424 [153 Cal.Rptr. 224, 591 P.2d 514].)

The judgment is reversed.

Channell, J., and Perley, J., concurred.

Respondent's petition for review by the Supreme Court was denied July 25, 1990.