Filed 1/16/25  P. v. Campos CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B330784 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. TA159029) |
| v. | |
| DANNY CAMPOS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Hector E. Gutierrez, Judge.  Affirmed.

Sarah S. Sanger and Robert M. Sanger, under appointments by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant

Attorney General, Stephanie C. Brenan and Gabriel Bradley, Deputy Attorneys General, for Plaintiff and Respondent.

––––––––––––––––––

A jury found Danny Campos guilty of possession of a firearm with a prior violent felony conviction. On appeal, Campos argues the evidence of the firearm should have been suppressed because it was obtained in violation of his Fourth Amendment rights, and trial counsel was ineffective for failing to bring a suppression motion. Campos also contends that the trial court erroneously instructed the jury on flight. We affirm the judgment.

**FACTUAL AND PROCEDURAL BACKGROUND**

On December 1, 2022, at approximately 7:22 p.m., Los Angeles County Sheriff Deputies Eliezer Vera and Joseph Welch were in a marked car, patrolling a residential area in the City of Lynwood. On one street, they observed a vehicle impeding traffic. A man wearing black clothing, a black L.A. Dodgers hat, and a crossbody bag was standing near the driver's side door of the car.

Vera shined his flashlight on the vehicle and the person standing next to it. The man turned towards the officers, such that Vera could observe his "whole front area." Welch also saw the man and noticed that he wore a black crossbody bag. The individual appeared frightened and startled. He ran away within seconds of Vera shining the light on him. At trial, Vera and Welch both identified this individual as Campos.

Vera followed Campos on foot. He witnessed Campos run through the side yard of a residence, climb over a gate, and continue running. Vera then lost sight of him.

2

Vera called for backup. Within one to three minutes, a helicopter and additional patrol vehicles arrived. Law enforcement "took a position of containment," and blocked off two streets in the area to create a "box" around Campos's last known location, which took about two minutes. The helicopter circled over the area. This ensured that law enforcement had a "constant visual so that nobody could come in or out."

Vera and other deputies searched for Campos. In the yard of the house directly to the north of the residence where Vera had last seen Campos, they found a black crossbody bag. Vera recognized it as the one Campos had been wearing. The bag was open, and the deputies saw a semiautomatic handgun inside. The gun was loaded. No one at the property claimed the bag, and Campos did not live at the residence. The deputies found the bag approximately 20 minutes after Vera had last seen Campos.

Vera radioed for a K-9 unit. The K-9 unit alerted the deputies to a person under a vehicle at a house that shared an adjoining wall with the yard where the deputies had found the bag. There was a black L.A. Dodgers hat on the ground near where the man had hidden. Vera identified that person, Campos, as the man he had seen earlier by the car.

In March 2023, an amended information charged Campos with one count of possession of a firearm with a prior violent conviction (Pen. Code, § 29900, subd. (a)(1); count 1).[1] It also alleged Campos had suffered prior convictions within the meaning of the Three Strikes Law (§§ 667, subds. (b)–(j), 1170.12) for first degree burglary (§ 459) and assault with a deadly

---

[1] All undesignated statutory references are to the Penal Code.

3

weapon (§ 245, subd. (a)(1)).  The information additionally alleged three circumstances in aggravation.

At a March 2023 jury trial, the parties stipulated that Campos had been previously convicted of a felony.  Campos did not present any evidence at trial.  His counsel argued to the jury that the People could not prove beyond a reasonable doubt that Campos was the man Vera and Welch had seen by the car, or that the bag the deputies found was the same bag the person on the street had been wearing.  The prosecution asserted it was Campos who fled after seeing the police and his flight indicated he knew he had a gun in his bag, which was relevant to one of the elements of the charge under section 29900, subdivision (a)(1).[2]

Without objection from the defense,[3] the trial court instructed the jury with CALCRIM No. 372 regarding flight: "If the defendant fled immediately after the crime was committed, that conduct may show that he was aware of his guilt.  If you conclude that the defendant fled, it is up to you to decide the meaning and importance of that conduct.  However, evidence that the defendant fled cannot prove guilt by itself."

The jury found Campos guilty as charged.  Campos waived a jury trial on his prior convictions and the alleged circumstances in aggravation.  Campos admitted the strike priors, and the trial court dismissed one in the interests of justice.  Campos also

---

[2]     The prosecution informed the jury there were three elements it had to find for a conviction: (1) Campos possessed a firearm, (2) Campos knew he possessed a firearm, and (3) Campos had been previously convicted of a felony.

[3]     In his briefing on appeal, Campos states the flight instruction was given over trial counsel's objection.  We find no support for this contention in the record.

4

admitted as true the aggravating circumstance that he committed the charged crime while on probation, mandatory supervision, post-release community supervision, or parole, within the meaning of California Rules of Court, rule 4.421(b)(4). The court sentenced Campos to a state prison term of six years.

Campos timely appealed.

## DISCUSSION

Campos argues that evidence of the firearm should have been suppressed because it was obtained in violation of his Fourth Amendment rights. He concedes that his trial counsel did not file a motion to suppress, but asserts the argument is cognizable on appeal as one for ineffective assistance of counsel.[4] Campos also argues that the trial court erred in instructing the jury on flight. We find no error and affirm.

## I.     Campos Has Not Established Ineffective Assistance of Counsel

### A.     Applicable legal principles

The Sixth Amendment to the United States Constitution, and article I, section 15 of the California Constitution, guarantee the right to the assistance of counsel in criminal prosecutions. The "proper standard for attorney performance is that of reasonably effective assistance." (*Strickland v. Washington* (1984) 466 U.S. 668, 687 (*Strickland*); *People v. Pope* (1979) 23 Cal.3d 412, 424 [attorney must provide "reasonably competent

---

[4]     To the extent Campos is attempting to raise a standalone Fourth Amendment argument, he may not raise it for the first time on appeal. (*People v. Jenkins* (1975) 13 Cal.3d 749, 753 (*Jenkins*) [failure to raise Fourth Amendment issue by suppression motion before conviction forecloses argument on appeal].)

5

assistance"].)  An ineffective assistance claim "has two components.  First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense.  This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." (*Strickland*, at p. 687.)

" ' "In order to prevail on [an ineffective assistance of counsel] claim on direct appeal, the record must affirmatively disclose the lack of a rational tactical purpose for the challenged act or omission." [Citation.]' [Citation.]" (*People v. Majors* (1998) 18 Cal.4th 385, 403.)  Thus, "if the record ' "sheds no light on why counsel acted or failed to act in the manner challenged," ' we must reject the claim ' "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation." ' [Citation.]" (*People v. Caro* (2019) 7 Cal.5th 463, 488 (*Caro*).)  There is a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance.  (*People v. Stanley* (2006) 39 Cal.4th 913, 954.)  We therefore defer to trial counsel's reasonable tactical decisions and do not judge those decisions in hindsight's harsh light.  (*Ibid*.)

"Where a defendant claims ineffective assistance based on counsel's failure to litigate a Fourth Amendment claim, *Strickland*'s performance prong requires [him or] her to show that it was objectively unreasonable—'that is, contrary to prevailing professional norms'—to forgo the [suppression] motion." (*Caro, supra*, 7 Cal.5th at p. 488.)  "Examining the

Fourth Amendment claim's merit has a role to play here.  For example, '[c]ounsel is not ineffective for failing to make frivolous or futile motions.' [Citation.]" (*Ibid.*)  "The prejudice prong of *Strickland* then requires the defendant to 'prove that [the] Fourth Amendment claim is meritorious and that there is a reasonable probability that the verdict would have been different absent the excludable evidence.' [Citations.]" (*Ibid.*)

### B.    Application

The record does not affirmatively indicate why Campos's trial counsel did not file a suppression motion.  "[W]e presume counsel's decision not to raise the claim was a reasonable, tactical one unless the record affirmatively demonstrates otherwise." (*People v. Lucas* (1995) 12 Cal.4th 415, 443.)  Nothing in the record permits an inference that counsel's decision was anything other than a tactical one.  There is no evidence that counsel "was unaware of the exclusionary rule, the procedure for invoking it, or the grounds for its invocation." (*Jenkins*, *supra*, 13 Cal.3d at p. 754.)  Campos has not met his burden of establishing the decision was not tactical.  (*Id.* at p. 753 [when counsel does not bring a motion to suppress, defendant bears the burden of establishing counsel's ineffectiveness in a non-speculative manner].)  Indeed, the relevant Fourth Amendment jurisprudence indicates it was not objectively unreasonable for Campos's counsel to forgo the suppression motion and, for similar reasons, Campos cannot establish that any such motion would have been meritorious.

Campos asserts that evidence of the firearm should have been excluded because it was the fruit of an unlawful seizure that occurred when law enforcement pursued him.  The United States Supreme Court addressed a nearly identical issue in *California v.*

7

*Hodari D.* (1991) 499 U.S. 621 (*Hodari*).  In *Hodari*, police officers were on patrol, wearing jackets identifying them as police, when they came upon several young people, including the defendant, Hodari.  Upon seeing the officers in their unmarked car, the youths immediately took flight.  (*Id.* at pp. 622–623.)  The officers pursued them.  When one officer had nearly reached him, Hodari tossed away a small rock of crack cocaine.  The officer tackled Hodari a moment later.  (*Id.* at p. 623.)  Although the juvenile court denied a motion to suppress, the Court of Appeal reversed, concluding Hodari was seized when he saw the officer running toward him, the seizure was unreasonable under the Fourth Amendment, and the evidence of cocaine was the fruit of the illegal seizure and therefore had to be suppressed.  The California Supreme Court denied the People's petition for review, but the United States Supreme Court granted certiorari.  (*Ibid.*)

The high court considered only the issue of whether "at the time he dropped the drugs, Hodari had been 'seized' within the meaning of the Fourth Amendment."  (*Hodari, supra,* 499 U.S. at p. 623, fn. omitted.)  Hodari argued that if he had been seized, "the drugs were the fruit of that seizure and the evidence concerning them was properly excluded.  If not, the drugs were abandoned by Hodari and lawfully recovered by the police, and the evidence should have been admitted."  (*Id.* at p. 624.)  The court held there is no seizure if the subject does not yield.  (*Id.* at p. 626.)  Thus, "assuming [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled.  The cocaine abandoned while he was running was in this case not the fruit of a seizure, and his motion to exclude evidence of it was properly denied."  (*Id.* at p. 629.)

On appeal, Campos asserts *Hodari* is distinguishable because he was "seized" once the officers created a containment zone and surrounded the area with cars and a helicopter. Yet, this argument ignores that the record does not indicate when, during the pursuit, Campos abandoned the bag containing the firearm. Campos argues that the bag was *found* after the containment, but this does not establish that it was not *abandoned* beforehand, during the chase. This timing is critical. (*Hodari*, *supra*, 499 U.S. at pp. 623–624, 629; *People v. Raybourn* (1990) 218 Cal.App.3d 308, 313 [recognizing that contraband found as a "*product* of the illegal detention" is subject to suppression, whereas contraband discarded in *anticipation* of detention during a police chase is not (italics added)].) As the People point out, the record on this point was not developed because Campos failed to move to suppress the evidence prior to trial.[5] On this record, Campos cannot establish that it was objectively unreasonable for his trial counsel to fail to file a suppression motion. The United States Supreme Court has not overturned *Hodari* (see, e.g., *County of Sacramento v. Lewis* (1998) 523 U.S. 833, 844 ["a police pursuit in attempting to seize a person does not amount to a 'seizure' within the meaning of the Fourth Amendment"]), and courts of this state have followed the ruling, as they must. (See, e.g., *People v. Turner* (1994) 8 Cal.4th

---

[5] To the extent there was any relevant information in the record, it did not necessarily support the claim Campos now makes on appeal. Deputy Vera testified that he saw Campos run through the yard of one residence, climb over a gate, and continue running. At that point he lost sight of Campos and called for backup, which led to the "containment." The bag was found in the yard of a residence that was only one house north of the house where Vera had last seen Campos.

9

137, 180–181; *People v. Arangure* (1991) 230 Cal.App.3d 1302, 1307; *People v. Johnson* (1991) 231 Cal.App.3d 1, 11.)

Even assuming there was a colorable legal argument that the containment zone constituted a seizure, if counsel had information indicating Campos abandoned the bag before the containment was set up, *Hodari* would indisputably control, rendering any suppression motion futile. "An appellate court should not declare that a police officer acted unlawfully, suppress relevant evidence, set aside a jury verdict, and brand a defense attorney incompetent unless it can be truly confident all the relevant facts have been developed and the police and prosecution had a full opportunity to defend the admissibility of the evidence." (*People v. Mendoza Tello* (1997) 15 Cal.4th 264, 267.) We have no such confidence here.

For the same reasons, Campos cannot establish that a suppression motion would have been meritorious. The record does not indicate that the facts, if developed, would have taken the case outside of the reasoning of *Hodari*. (*Caro, supra*, 7 Cal.5th at p. 489 [ambiguity in record prevented court from determining plain view exception was inapplicable, thus defendant did not carry her burden to establish Fourth Amendment claim had merit]; cf. *People v. Patrick* (1982) 135 Cal.App.3d 290, 294 [rejecting argument that abandoned evidence thrown over a fence during police chase due to threatened illegal detention should be suppressed].)

In sum, Campos has not carried his burden of establishing ineffective assistance of counsel. He has not shown that counsel's decision not to file a suppression motion was anything other than tactical or was objectively unreasonable. Further, on the record before us, he has not demonstrated that if counsel had filed a

motion to suppress, there was a reasonable probability it would have been granted and he would have obtained a more favorable result. He has therefore failed to establish either prong of the ineffective assistance of counsel test.

## II. Campos Has Not Established Reversible Error Based on the Flight Instruction

Campos argues that the flight instruction was improper because identity was disputed. He contends the flight instruction "directed the jurors' attention to something that was not relevant to determining Appellant's guilt," since the identity of the person with the bag was the only issue for the jury. He also maintains there is no connection between running from a flashlight and consciousness of guilt. Campos appears to argue that the instruction was not supported by the evidence.

Campos did not object to the flight instruction in the trial court. Therefore, we agree with the People that Campos has forfeited this argument. (*People v. Anderson* (2007) 152 Cal.App.4th 919, 927 ["Failure to object to instructional error forfeits the issue on appeal unless the error affects defendant's substantial rights."].) The question remains however whether any alleged error was prejudicial under *People v. Watson* (1956) 46 Cal.2d 818. (*Anderson*, at p. 927.) We therefore address the merits of Campos's argument and find no error.

Under section 1127c, when the prosecution relies on evidence of the defendant's flight as tending to show guilt, the trial court must provide a flight instruction. The instruction is to inform the jury that "[t]he flight of a person immediately after the commission of a crime, or after he is accused of a crime that has been committed, is not sufficient in itself to establish his guilt, but is a fact which, if proved, the jury may consider in

11

deciding his guilt or innocence.  The weight to which such circumstance is entitled is a matter for the jury to determine." (§ 1127c.)

Courts have rejected the argument Campos makes here, namely that the trial court should not instruct the jury on flight when identity is at issue in the case.  In *People v. Mason* (1991) 52 Cal.3d 909, 943 (*Mason*), the court explained that courts have widely rejected the proposition that a flight instruction is error whenever identity is a contested issue.  Instead, "[i]f there is evidence identifying the person who fled as the defendant, and if such evidence 'is relied upon as tending to show guilt,' then it is proper to instruct on flight.  (§ 1127c.)  'The jury must know that it is entitled to infer consciousness of guilt from flight and that flight, alone, is not sufficient to establish guilt.  ([ ] § 1127c.)  The jury's need to know these things does not change just because identity is also an issue.  Instead, such a case [only] requires the jury to proceed logically by deciding first whether the [person who fled] was the defendant and then, if the answer is affirmative, how much weight to accord to flight in resolving the other issues bearing on guilt.  The jury needs the instruction for the second step.' [Citation.]"  (*Id.* at p. 943, citing *People v. London* (1988) 206 Cal.App.3d 896, 903.)

Here, there was evidence of Campos's flight "apart from his identification as the perpetrator, from which the jury could reasonably infer a consciousness of guilt." (*People v. Rhodes* (1989) 209 Cal.App.3d 1471, 1476, italics omitted.)  Under such circumstances, the instruction is appropriate.  (*People v. Scott* (1988) 200 Cal.App.3d 1090, 1094.)  We further disagree with Campos's assertion that the evidence was insufficient to create an inference of consciousness of guilt because he was not fleeing

12

the scene of a crime and was merely running from a flashlight. The evidence at trial established Campos was unlawfully in possession of a firearm, a fact of which he would have been aware, and, upon seeing law enforcement officers shine a light on him from a marked police car, he fled. It was proper for the trial court to instruct on flight. (*Mason, supra*, 52 Cal.3d at p. 943.)

Moreover, even if the trial court erred in giving the instruction, Campos has not established it was reasonably probable that the jury would have reached a more favorable result had the instruction been omitted. There is no evidence that the flight instruction misdirected or confused the jury. Indeed, the jury was also instructed: "Some of these instructions may not apply, depending on your findings about the facts of the case. Do not assume just because I give a particular instruction that I am suggesting anything about the facts. After you have decided what the facts are, follow the instructions that do apply to the facts as you find them." The flight instruction also left it up to the jury to decide "the meaning and importance" of Campos's flight. While the instruction informed the jury that it could consider the evidence of flight as an indication that Campos "was aware of his guilt," it also provided that the "evidence that the defendant fled cannot prove guilt by itself." Absent a contrary indication in the record, we presume that the jury followed the court's instructions. (*Carroll v. Commission on Teacher Credentialing* (2020) 56 Cal.App.5th 365, 382–383.) " '[T]he instruction merely permitted the jury to consider evidence of flight in deciding defendant's guilt or innocence; it did not suggest that the jury should consider such evidence as dispositive.' [Citation.]" (*People v. Abilez* (2007) 41 Cal.4th 472, 522.)

13

Campos has not demonstrated that without the flight instruction, it was reasonably probable that the jury would have reached a more favorable verdict.

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

ADAMS, J.

We concur:

EGERTON, Acting P. J.

HANASONO, J.*

---

* Judge of the Los Angeles Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.