Filed 10/24/13  P. v. Mann CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E056493 |
| v. | (Super.Ct.No. SWF1101479) |
| RICHARD BERNARD MANN SR., | **OPINION** |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Dennis A. McConaghy, Judge.  Affirmed.

Denise M. Rudasill, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Julie L. Garland, Senior Assistant Attorney General, and Melissa Mandel and Charles C. Ragland, Deputy Attorneys General, for Plaintiff and Respondent.

1

Defendant Richard Bernard Mann Sr. was standing on a street corner when a police officer asked him for his identification. Defendant said he would go get it and started to walk away. The officer said that was not necessary and added, "Come on over here!" Nevertheless, defendant broke into a run. The officer chased him and saw him swallow several bindles. Defendant hid under a truck; he violently resisted the officer's efforts to drag him out and to handcuff him. Bindles of heroin and methamphetamine were then found under the truck.

After a jury trial, defendant was found guilty of possession of methamphetamine (Health & Saf. Code, § 11377, subd. (a)), possession of heroin (Health & Saf. Code, § 11350, subd. (a)), and resisting an executive officer (Pen. Code, § 69). In a bifurcated proceeding, the jury found true one "strike" prior allegation (Pen. Code, §§ 667, subds. (b)-(i), 1170.12) and seven prior prison term allegations (Pen. Code, § 667.5, subd. (b)).[1]

As a result, defendant was sentenced to 13 years 4 months in prison, along with the usual fines, fees, and conditions.

---

[1] The prosecution later conceded that two of the prior prison terms had been served concurrently, and hence only six prior prison term allegations should have been found true. (See Pen. Code, § 667.5, subd. (g).) The trial court therefore stayed the sentence on one of the prior prison term enhancements.

2

Defendant now contends:

1.  Defendant was unlawfully detained, and therefore:

   a.  There was insufficient evidence that the officer was lawfully performing his duties.

   b.  The trial court erred by denying defendant's motion to suppress the drugs and other evidence.

2.  Defendant was prejudiced by the prosecution's delayed discovery of an audio recording of the encounter because there is a reasonable probability that timely disclosure would have changed the outcome of defendant's *Pitchess* motion.[2]  To the extent that defense counsel failed to preserve this issue by raising it below, defendant contends that she rendered constitutionally ineffective assistance.

We find no error.  Hence, we will affirm.

I

FACTUAL BACKGROUND

On June 13, 2011, around 12:30 p.m., Hemet Police Officer Rene McNish was on routine patrol when he saw defendant standing on a corner.  Two people — a Hispanic man and woman — were standing with defendant.  Officer McNish stopped, got out, and

---

[2]     A "*Pitchess* motion" is a motion for discovery of a peace officer's confidential personnel records.  (*Pitchess v. Superior Court* (1974) 11 Cal.3d 531.)

3

contacted them. The subsequent encounter was captured by an audio recorder on Officer McNish's belt.[3]

Officer McNish asked, "You guys mind if we talk to you?" On the belt recording, defendant can be heard saying something in response, but it is unintelligible. Officer McNish later testified that defendant "indicated to me yes, that it was okay."

The conversation continued:

"McNISH: . . . You got an I.D. on you, boss?

"[DEFENDANT]: Can I grab it?

"McNISH: No, it's all right.

"[DEFENDANT]: [Unintelligible.]

"McNISH: I said, no, it's all right. You don't need to grab it. Hey!

"UNKNOWN: [Unintelligible.]

"McNISH: Come on over here!"[4]

At this point, Officer McNish can be heard running.

Officer McNish explained that, when he said, "No, it's all right," defendant started to turn around. Defendant had taken two or three steps by the time Officer McNish told

---

[3] In addition to reviewing the transcript of the recording, we have had the recording itself transmitted to us, and we have listened to it.

[4] Defendant claims that Officer McNish "yelled" these words. Our impression from the recording is that he may have spoken a little more loudly, but no more so than one would expect if defendant was moving away from him; he sounds more surprised than either angry or commanding.

him, "Come on over here!" At that point, defendant started to run, and Officer McNish started to chase him.

During the chase, defendant removed plastic bindles of a type commonly used for controlled substances from his pockets and put some of them in his mouth.

When Officer McNish caught up to him, defendant was under a truck that was parked in a driveway. Officer McNish grabbed his legs and dragged him out. Defendant resisted by trying to hit and kick Officer McNish; some of these blows connected. Officer McNish repeatedly ordered defendant to put his hands behind his back, but defendant did not comply. Defendant was yelling and screaming for help and saying that he could not breathe. At one point, he said, "Please don't choke me"; however, Officer McNish denied choking him. Officer McNish punched defendant in the face twice; when that seemed to have little effect, he punched him in the face twice again. This enabled him to grab one of defendant's hands.

After handcuffing defendant, Officer McNish looked under the truck and saw "plastic stuff" in the rim of a spare tire. As he watched, the owner of the truck went under the truck and retrieved several bindles.[5] These appeared to contain methamphetamine, heroin, and marijuana. Two of the bindles were tested; they proved to contain 1.72 grams of methamphetamine and 0.11 grams of heroin.

---

[5]     In his report and at the preliminary hearing, Officer McNish had stated that he searched under the truck, without mentioning the truck owner.

Defendant was left with a cut near his eye.  He told a paramedic that he had swallowed 1.5 grams of heroin.

II

THE SUFFICIENCY OF THE EVIDENCE THAT THE DETENTION WAS LAWFUL

Defendant argues that Officer McNish detained him unlawfully, and hence there was insufficient evidence that the officer was lawfully performing his duties to support the conviction for resisting an executive officer.

Resisting an officer can be committed by:

1.  "[A]ttempt[ing], by means of any threat or violence, to deter or prevent an executive officer from performing any duty imposed upon such officer by law"; or

2.  "[K]nowingly resist[ing], by the use of force or violence, [an executive] officer, in the performance of his duty . . . ."  (Pen. Code, § 69; see also *In re Manuel G.* (1997) 16 Cal.4th 805, 814.)

"The first form of a violation of section 69 'encompasses attempts to deter either an officer's immediate performance of a duty imposed by law or the officer's performance of such a duty at some time in the future.'  [Citation.]  The second form of violating section 69 'assumes that the officer is engaged in such duty when resistance is offered,' and 'the officers must have been acting lawfully when the defendant resisted arrest.'  [Citation.]"  (*People v. Nishi* (2012) 207 Cal.App.4th 954, 966, italics omitted.)

6

"The long-standing rule in California and other jurisdictions is that a defendant cannot be convicted of an offense against a peace officer "'engaged in . . . the performance of . . . [his or her] duties'" unless the officer was acting lawfully at the time the offense against the officer was committed. [Citations.] 'The rule flows from the premise that because an officer has no duty to take illegal action, he or she is not engaged in "duties," for purposes of an offense defined in such terms, if the officer's conduct is unlawful. . . . [¶] . . . [T]he lawfulness of the [officer]'s conduct forms part of the corpus delicti of the offense.' [Citation.]" (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 815.)

"[A] consensual encounter between a police officer and an individual does not implicate the Fourth Amendment. It is well established that law enforcement officers may approach someone on the street or in another public place and converse if the person is willing to do so. There is no Fourth Amendment violation as long as circumstances are such that a reasonable person would feel free to leave or end the encounter. [Citations.]" (*People v. Rivera* (2007) 41 Cal.4th 304, 309.) "[E]ven when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual[] [citations] [and] ask to examine the individual's identification[] [citations] . . . — as long as the police do not convey a message that compliance with their requests is required." (*Florida v. Bostick* (1991) 501 U.S. 429, 434-435.)

But "[e]ven 'an initially consensual encounter . . . can be transformed into a seizure or detention within the meaning of the Fourth Amendment.' [Citations.]" (*Kaupp v. Texas* (2003) 538 U.S. 626, 632.) "Unlike a consensual encounter, a detention

7

is a seizure within the meaning of the Fourth Amendment of the United States Constitution . . . .  [Citations.]"  (*People v. Mendoza* (2011) 52 Cal.4th 1056, 1081.)

"'A seizure occurs whenever a police officer "by means of physical force or show of authority" restrains the liberty of a person to walk away.'  [Citation.]  Whether a seizure has taken place is to be determined by an objective test, which asks 'not whether the citizen perceived that he was being ordered to restrict his movement, but whether the officer's words and actions would have conveyed that to a reasonable person.'  [Citation.]  Thus, when police engage in conduct that would 'communicate[] to a reasonable person that he was not at liberty to ignore the police presence and go about his business,' there has been a seizure.  [Citations.]"  (*People v. Celis* (2004) 33 Cal.4th 667, 673.)

"[P]olice officers . . . may temporarily detain a suspect based only on a 'reasonable suspicion' that the suspect has committed or is about to commit a crime. [Citations.]"  (*People v. Bennett* (1998) 17 Cal.4th 373, 386-387.)  "'Under California law, an officer is not lawfully performing her duties when she detains an individual without reasonable suspicion or arrests an individual without probable cause.' [Citation.]"  (*Garcia v. Superior Court* (2009) 177 Cal.App.4th 803, 819, italics omitted.)

According to defendant, he was detained when Officer McNish said, "Come on over here!"  We recognize that "[c]ircumstances establishing a seizure might include . . . the use of language or of a tone of voice indicating that compliance with the officer's request might be compelled.  [Citations.]"  (*In re Manuel G.*, *supra*, 16 Cal.4th at p. 821.)

However, an attempt to detain is not a detention. There is no detention until someone's liberty is in fact restrained. "[A] seizure 'requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority.' [Citation.]" (*People v. Turner* (1994) 8 Cal.4th 137, 180.) "[A] policeman yelling 'Stop, in the name of the law!' at a fleeing form that continues to flee . . . is no seizure." (*California v. Hodari D.* (1991) 499 U.S. 621, 626.)

*Hodari D.* is almost on all fours. There, two officers on patrol spotted a group of five youths. (*California v. Hodari D.*, *supra*, 499 U.S. at p. 622.) When the youths saw the officers, they ran. (*Id*. at pp. 622-623.) One officer got out and chased them. He saw Hodari toss away a small rock that turned out to be crack cocaine. He then tackled Hodari. (*Id*. at p. 623.) The prosecution conceded that the officer did not have reasonable suspicion for a stop. (*Id*. at p. 623, fn. 1.) A California court of appeal therefore held that Hodari was seized when he saw the officer running after him, and hence the cocaine was the fruit of an illegal seizure. (*Id*. at p. 623.)

The United State Supreme Court, however, held that Hodari had not yet been seized when he dropped the cocaine. (*California v. Hodari D.*, *supra*, 499 U.S. at pp. 623-629.) It stated: "Hodari contends (and we accept as true for purposes of this decision) that [the officer's] pursuit qualified as a 'show of authority' calling upon Hodari to halt. The narrow question before us is whether, with respect to a show of authority as with respect to application of physical force, a seizure occurs even though the subject does not yield. We hold that it does not." (*Id*. at pp. 625-626.) "In sum,

9

assuming that [the officer's] pursuit in the present case constituted a 'show of authority' enjoining Hodari to halt, since Hodari did not comply with that injunction he was not seized until he was tackled." (*Id*. at p. 629.) It also noted that "[the officer's] seeing the rock of cocaine, at least if he recognized it as such, would provide reasonable suspicion for the unquestioned seizure that occurred when he tackled Hodari." (*Id*. at p. 624.)

Here, even if Officer McNish's statement, "Come on over here!," is viewed as a show of authority, defendant clearly did not yield to that show of authority. Rather, Officer McNish had to chase him and had to use physical force to apprehend him. In the interim, the officer saw defendant taking suspicious bindles out of his pockets and putting them in his mouth. Thus, the officer had not only reasonable suspicion but probable cause to arrest by the time he was actually able to effect a seizure.

Defendant relies on *People v. Bower* (1979) 24 Cal.3d 638, which held that the defendant was detained when an officer called to him to stop and turn around. (*Id*. at p. 643.) There, however, the defendant *did* stop and turn around (*ibid*.); thus, he submitted to the officer's assertion of authority. In any event, *Bower* was decided before *Hodari D.* — the first case that authoritatively required either physical force or submission.

Defendant also relies on *People v. Verin* (1990) 220 Cal.App.3d 551, which held: "[W]hen an officer 'commands' a citizen to stop, this constitutes a detention because the citizen is no longer free to leave. [Citation.]" (*Id*. at p. 556.) *Verin*, however, cited *Bower* for this proposition. Moreover, *Verin*, like *Bower*, was decided before *Hodari D.*

10

We therefore conclude that there was substantial evidence that Officer McNish was lawfully performing his duties — i.e., lawfully attempting to arrest defendant, based on probable cause — at the time when defendant violently resisted arrest.

III

MOTION TO SUPPRESS

In a related contention, defendant also contends that the trial court erred by denying his third and final motion to suppress.

A.    *Additional Factual and Procedural Background.*

Before the preliminary hearing, defendant filed a motion to suppress the drugs and other physical evidence that Officer McNish had recovered.  The motion was heard concurrently with the preliminary hearing.  (See Pen. Code, § 1538.5, subd. (f).)  At the end of the hearing, the magistrate denied the motion.

Prior to trial, defendant filed a second motion to suppress.  The trial court denied the motion on procedural grounds, without an evidentiary hearing.

Just days before trial, however, the prosecutor produced Officer McNish's belt recording to the defense.  (See part IV, *post*.)  Defense counsel argued that the late discovery had prejudiced defendant because, among other things, he had not been able to use the belt recording to support his suppression motions.  She asked the trial court to "revisit" the suppression issue.  The prosecutor conceded that the belt recording was new evidence warranting a new suppression hearing.  The trial court therefore set such a hearing.

11

When the hearing began, the parties stipulated that the trial court was "totally rehearing" the motion, and not just supplementing the preliminary hearing transcript. (Compare Pen. Code, § 1538.5, subd. (h) with *id*., subd. (i).)

The testimony at the suppression hearing was substantially similar to the evidence at trial, except as noted below.

Officer McNish testified that defendant was in an area where he had made 20 to 30 previous drug arrests. When he had seen people on that sidewalk before, they were involved in criminal activity "the majority of the time."

Officer McNish also testified that, when he said, "[I]t's all right," defendant "turned around and ran away." Later, however, he testified (as at trial) that defendant started running only after he said, "Come on over here!" He chased defendant because, "[b]ased on the location of our contact and his abrupt manner in running away from me, indicated there was reasonable suspicion that he was doing something that was illegal."

The trial court denied the motion. It explained: "If when the officer walked up and said, 'Can I see your ID,' and if Mr. Mann would have said '[N]o' and walked away, end of story." "But saying, 'I'll get it," and then the officer saying, 'No, you don't need to,' and then he takes off, I think the officer is doing what we expect officers to do . . . ."

B.      *Analysis*.

"In ruling on a motion to suppress, the trial court must find the historical facts, select the rule of law, and apply the rule to the facts in order to determine whether the law as applied has been violated. [Citation.] We review the trial court's resolution of the

12

factual inquiry under the deferential substantial evidence standard. [Citation.] Selection of the applicable law is a mixed question of law and fact that is subject to independent review. [Citation.]" (*People v. Gonzales and Soliz* (2011) 52 Cal.4th 254, 284.)

As discussed in part II, *ante*, Officer McNish did not detain defendant by saying "Come on over here!" or even by chasing him. Defendant was not detained until after Officer McNish saw him pull bindles out of his pockets and put them in his mouth, which gave Officer McNish probable cause for an arrest. Accordingly, the evidence was not the product of an illegal detention.

We also note, however, that unlike at trial, Officer McNish testified that defendant "ran away" as soon as he said, "[I]t's all right" — in other words, before he said "Hey!" and "Come on over here!" The trial court seems to have accepted this testimony, as it found that "the officer say[s], 'No, you don't need to,' and then [defendant] takes off . . . ."

In this scenario, even assuming the words "Come on over here!," standing alone, could constitute a detention, defendant had already started running before these words were spoken. This gave the officer reasonable suspicion. "While such evidence of flight, of itself, is not sufficient to justify an investigative stop, it 'is a proper consideration — and indeed can be a key factor — in determining whether in a particular case the police have sufficient cause to detain.' [Citations.]" (*People v. Turner* (2013) 219 Cal.App.4th 151, 168.) Here, under the totality of the circumstances — including that (1) the encounter took place in a high-crime area, (2) defendant seemed willing to talk to the

13

officer until he was asked for his identification, and (3) defendant made no excuse for leaving — defendant's sudden flight suggested consciousness of guilt. (Cf. *People v. Souza* (1994) 9 Cal.4th 224, 228, 242 [fact that defendant was talking to two people in parked car at 3:00 a.m. in a high crime area, plus fact that, when officer shone spotlight, people in car bent down and defendant took off running, "justified a brief, investigative detention . . . ."].)

Accordingly, the trial court properly denied defendant's motion to suppress.

IV

THE EFFECT OF THE PROSECUTION'S DELAYED DISCLOSURE

OF THE BELT RECORDING ON DEFENDANT'S *PITCHESS* MOTION

Defendant contends that he was prejudiced by the prosecution's delayed disclosure of the belt recording because there is a reasonable probability that timely disclosure would have changed the outcome of his *Pitchess* motion. To the extent that defense counsel failed to preserve this issue by raising it below, defendant contends that she rendered constitutionally ineffective assistance.

A.      *Additional Factual and Procedural Background*.

In January 2012, after the preliminary hearing, defendant filed a *Pitchess* motion, seeking Officer McNish's personnel records, including records related to lack of veracity and excessive force. The City of Hemet filed an opposition.

In February 2012, the trial court held a hearing on the motion. At the hearing, defense counsel stated: "[T]he main concern here is the lack of veracity." At the end of the hearing, the trial court denied the motion. It explained, "I don't see any veracity issues," essentially because independent witnesses (the Hispanic man, the owner of the truck, and the paramedic) could corroborate Officer McNish.

In April 2012, just days before trial, the prosecution produced the belt recording to the defense. There were two minor discrepancies between the belt recording and Officer McNish's testimony at the preliminary hearing:

1. At the preliminary hearing, Officer McNish testified that, when he asked if he could speak with defendant, defendant said yes. In the recording, defendant can be heard saying something, but it is not intelligible.

2. At the preliminary hearing, Officer McNish testified that, after he told defendant not to worry about his identification, defendant began to look around, then turned and ran; Officer McNish chased him. The recording reflects that Officer McNish also said "Hey!" and "Come on over here!" before starting to chase defendant.

On the date set for trial, defense counsel conceded that she had had an opportunity to review the recording and that she was ready for trial. However, she stated: "Just to preserve the issue . . . for appeal, . . . Mr. Mann is seeking that we revisit the 1538.5." The trial court agreed to hold a new suppression hearing.

15

B.    *Analysis*.

"Under the federal Constitution's due process clause, as interpreted by the high court in *Brady v. Maryland* [(1963)] 373 U.S. 83, 87, [83 S.Ct. 1194] (*Brady*), the prosecution has a duty to disclose to a criminal defendant evidence that is '"both favorable to the defendant and material on either guilt or punishment."' [Citations.]" (*In re Bacigalupo* (2012) 55 Cal.4th 312, 333.)

"For *Brady* purposes, evidence is favorable if it helps the defense or hurts the prosecution, as by impeaching a prosecution witness. [Citations.] Evidence is material if there is a reasonable probability its disclosure would have altered the trial result. [Citation.] Materiality includes consideration of the effect of the nondisclosure on defense investigations and trial strategies. [Citations.]" (*People v. Zambrano* (2007) 41 Cal.4th 1082, 1132-1133, disapproved on other grounds in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.) "Defendant has the burden of showing materiality. [Citation.]" (*People v. Hoyos* (2007) 41 Cal.4th 872, 918.)

Defense counsel forfeited defendant's present contention by failing to raise it below. (See *People v. Williams* (2008) 43 Cal.4th 584, 620 [failure to object below forfeited contention "that the People improperly delayed discovery or failed to disclose potentially inculpatory evidence prior to the preliminary hearing . . . ."].) "[A]s a general rule, 'the failure to object to errors committed at trial relieves the reviewing court of the obligation to consider those errors on appeal.' [Citations.] This applies to claims based on statutory violations, as well as claims based on violations of fundamental

16

constitutional rights.  [Citations.]" (*In re Seaton* (2004) 34 Cal.4th 193, 198.)  "To consider on appeal a defendant's claims of error that were not objected to at trial 'would deprive the People of the opportunity to cure the defect at trial and would "permit the defendant to gamble on an acquittal at his trial secure in the knowledge that a conviction would be reversed on appeal."'  [Citation.]" (*Ibid*.)

Defense counsel did raise a *Brady* issue below, but she argued that the belated disclosure was prejudicial exclusively with respect to defendant's motion to suppress. The trial court proceeded to cure this asserted prejudice by holding a new suppression hearing.  She never argued that the belated disclosure was also prejudicial with respect to defendant's *Pitchess* motion.  All she had to do was ask the trial court to hold a new *Pitchess* hearing, too.  Her failure to do so constitutes a forfeiture.

Defendant therefore argues that defense counsel's failure constituted ineffective assistance.  "When challenging a conviction on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy.  To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms.  Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different.  When examining an ineffective assistance claim, a reviewing court defers to counsel's reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance.  It is particularly difficult to prevail on an

appellate claim of ineffective assistance. On direct appeal, a conviction will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding. [Citations.]" (*People v. Mai* (2013) 57 Cal.4th 986, 987.)

Here, defendant cannot show that defense counsel's performance was deficient. The belated disclosure of the belt recording was a *Brady* violation if, and only if, it was reasonably probable that its timely disclosure would have altered the result *at trial*. Certainly, if defendant's motion to suppress were granted instead of denied, that would change the result at trial. Accordingly, defense counsel requested a new suppression hearing. By contrast, defendant could not show that, if his *Pitchess* motion was granted instead of denied, that would change the result at trial. For all we know, there was no relevant evidence in Officer McNish's file. Certainly defendant could not show that there was. Thus, the trial court had no obligation to hold a new *Pitchess* hearing, and defense counsel did not render ineffective assistance by failing to request one.

Moreover, even assuming a request for a new *Pitchess* hearing potentially had merit, defense counsel could have had a rational tactical reason for not requesting one. The trial was about to start; jury voir dire did start about one hour later. For a new *Pitchess* hearing to matter at all, the trial court would have had to order a hearing in camera; it would have had to find that Officer McNish's personnel file contained

18

evidence of prior incidents that tended to show dishonesty or excessive force; and, most important, defense counsel would have had to investigate and be prepared to prove up those prior incidents. The trial would have had to be continued.

Defendant, however, was in custody, and he was insisting on a timely trial. Back in February 2012, when the trial court originally heard defendant's *Pitchess* motion, defense counsel claimed he[6] had evidence supporting the motion that had not been included in his moving papers; the trial court offered to let him refile or supplement the motion, but he declined, stating: " . . . Mr. Mann already has a trial set. . . . [¶] . . . We're not willing to waive time at this time." In fact, he agreed with the trial court that the motion was "an exercise in futility," because even if the trial court granted it, he likely would not receive any *Pitchess* materials in time to use them at trial. If it was an exercise in futility in February, then a fortiori, it was an exercise in futility in April, when jury voir dire was about to start.

Finally, defendant cannot show that the failure to request a new *Pitchess* hearing was prejudicial. It is not reasonably likely that, even with the belt recording, the trial court would have granted the motion. To prevail on a *Pitchess* motion, "[w]hat the defendant must present is a specific factual scenario of officer misconduct that is plausible when read in light of the pertinent documents. [Citations.]" (*Warrick v. Superior Court* (2005) 35 Cal.4th 1011, 1025.) Here, the belt recording would not have

---

**6** At the hearing on the *Pitchess* motion, defendant was represented by a male attorney; at trial, he was represented by a female attorney.

19

supported a scenario of lack of veracity.  The discrepancies between the belt recording and Officer McNish's testimony were minor and arguably not even discrepancies at all. Officer McNish testified that, when he asked if he could speak with defendant, defendant said yes.  The recording reflects that defendant did say something; however, it is impossible to make out what it was.  Thus, the recording does not really contradict Officer McNish.  Also, at the preliminary hearing, Officer McNish did not mention the fact that he said "Hey!" and "Come on over here!"  However, he was not asked about this.  Thus, again the recording does not really contradict him.

Defendant argues that, once the trial court heard the belt recording, it might have granted the motion based on excessive force.  In the recording, defendant repeatedly says that Officer McNish is hitting him, that he is hurt, and that he cannot breathe.  At the preliminary hearing, however, Officer McNish admitted that he punched defendant in the face four times, leaving a cut by defendant's eye.  In his original motion, defendant claimed that "Off[icer] McNish struck [him] numerous times with his fist, causing injury . . . ."  Thus, the belt recording added no new information that was relevant to a scenario of excessive force.

We therefore conclude that defense counsel did not render ineffective assistance by failing to request a new *Pitchess* hearing based on the asserted *Brady* violation.

20

V

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RICHLI
J.

We concur:

McKINSTER
Acting P. J.

CODRINGTON
J.