Filed 8/23/21  P. v. Toler CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>JAMES OTIS TOLER, JR.,<br><br>    Defendant and Appellant. | B304879<br><br>(Los Angeles County<br>Super. Ct. No. BA476946) |

APPEAL from a judgment of the Superior Court of Los Angeles County.  Craig E. Veals, Judge.  Affirmed.

Justin Behravesh, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra and Rob Bonta, Attorneys General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Michael C. Keller and Douglas L. Wilson, Deputy Attorneys General, for Plaintiff and Respondent.

_____

James Otis Toler, Jr. appeals the judgment entered following a jury trial in which he was convicted of one count of possession of a firearm by a felon. (Pen. Code,[1] § 29800, subd. (a)(1).) Appellant admitted suffering a prior serious or violent felony conviction pursuant to the Three Strikes law. (§§ 667, subd. (d) & 1170.12, subd. (b).) The trial court sentenced appellant to four years in state prison.

Appellant contends the trial court erroneously denied his motion to suppress evidence under section 1538.5. We disagree and affirm the judgment of conviction. Appellant further seeks, and respondent does not oppose, appellate review of the sealed record of the hearing pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*) to determine whether police personnel records were improperly withheld from discovery. Having conducted our review of the in camera proceedings, we find no abuse of discretion.

## FACTUAL BACKGROUND

On July 29, 2018, around 12:35 a.m., Los Angeles Police Officers Matthew Bryant and Joel Dominguez were on patrol on a gang enforcement detail in the area of 84th Street and Vermont Avenue. The officers, who were in full uniform and driving a marked police vehicle, were investigating a shooting that had occurred in that neighborhood three or four hours earlier.

As Officer Bryant drove east on West 84th Street, he saw appellant standing in the street next to the open driver's side door of a vehicle that appeared to be double parked. As the patrol car drew closer, appellant bent down and placed on the ground a cup, which Officer Bryant believed to contain alcohol. He

---

[1] Undesignated statutory references are to the Penal Code.

2

remained bent over as he appeared to shift his weight to the left. Officer Bryant pulled up next to appellant and asked him if he was okay and what he was doing. Without changing his position, appellant responded that he was just fixing his sock.

It appeared to the officer, however, that appellant was attempting to conceal a firearm or contraband. Officer Bryant exited the patrol vehicle, and standing about three or four feet away from appellant, ordered him to turn around and place his hands behind his back. But instead of complying with the command, appellant stood up, turned, and immediately "took off running." Officers Bryant and Dominguez chased him. As appellant ran, he appeared to be holding onto his waistband near the left pocket of his pants with his left hand.

Appellant continued to run even as the officers repeatedly ordered him to stop. Officer Dominguez, who was running directly behind appellant, could see him holding a shiny object that looked like a gun in his left hand. Appellant ran between two houses, tripped over some bicycles, and fell twice. When he got up after the second fall, Officer Dominguez could no longer see anything in his hand, and video from the officer's body-worn camera showed a firearm on the ground where appellant had landed. Officer Dominguez used his TASER to subdue appellant. After appellant had been taken into custody, a stainless steel revolver was recovered in the exact spot where appellant had fallen the second time. The firearm was fully loaded and in good working condition.

# DISCUSSION

## I. The Trial Court Properly Denied the Motion to Suppress Evidence

### A. *Evidence presented at the suppression hearing*

At the hearing on appellant's motion to suppress evidence of the gun, Officer Bryant testified that in the early morning hours of July 29, 2018, he and Officer Dominguez were on patrol conducting an investigation of a shooting in which two of the victims were members of the Hoover criminal street gang. As they drove east on 84th Street, Officer Bryant observed a Dodge Charger he recognized as belonging to Hoover gang member Javonnie Murphy double parked on the street facing west. Murphy was standing nearby on the sidewalk, and appellant was standing in the middle of the street next to the open driver's side door of the Dodge Charger.

When appellant did not stand up after setting his cup down and remained bent over as he shifted his weight, Officer Bryant became suspicious and asked him what he was doing. Appellant replied without standing up that he was fixing his sock. But the officer suspected appellant was attempting to conceal a firearm or contraband. Intending to detain appellant, Officer Bryant exited the patrol car and ordered appellant to turn around and place his hands behind his back. Appellant turned around, but then immediately "just took off running."

There was no testimony about the recovery of the firearm.

### B. *The trial court's ruling on the motion to suppress*

The trial court observed that because there was no search of appellant that resulted in the recovery of a firearm, the evidence presented at the hearing seemed to bring the case within the scope of *California v. Hodari D.* (1991) 499 U.S. 621

4

(*Hodari*). Defense counsel disagreed, asserting that the initial detention—which occurred when the officer ordered appellant to turn around and put his hands behind his back—was illegal because there was no reasonable suspicion to stop or detain appellant in the first place. According to defense counsel, the video from the officer's body-worn camera showed that the car was not double parked, there was no cup, appellant was not standing in the middle of the street, and he was in fact, touching his sock. Thus, the later discovery of the gun flowed from an illegal detention and must be suppressed as the fruit of the poisonous tree.

Following the parties' arguments and its own review of Officer Bryant's body camera video, the trial court rejected the fruit of the poisonous tree argument and denied the motion to suppress on the ground that the gun had been abandoned and there had been no search. The court explained:

"So even if, for the sake of argument, that the initial detention was problematic, there are two possible scenarios. No one testified as to how this gun was recovered. So I'd [have to] assume one of two things happened. Either [appellant] ran and discarded the weapon before he was captured or [appellant] never had a weapon, and the weapon was there when they searched the area. It's got to be one or the other. There really are no other rational deductions I can make.

"Now, if [appellant] never had the weapon, then I don't know that he would have any legitimate expectation of privacy to assert. I mean, he runs. He's captured. And there's a weapon found. If he didn't have it, he didn't have it. So I don't see how he would be in a position to challenge [that]. . . .

"Under the second scenario, if he had it and discarded it then I think you have a **Hodari** . . . situation . . . where, if a person abandons an item then they essentially lose their expectation of privacy. . . . They abandon it. So they can't challenge that."

### C. *Legal analysis*

A motion to suppress evidence under section 1538.5 must be assessed under Fourth Amendment principles prohibiting law enforcement officers from engaging in unreasonable searches and seizures. (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212; *People v. Maury* (2003) 30 Cal.4th 342, 384.) " 'In reviewing a trial court's ruling on a motion to suppress evidence, we defer to that court's factual findings, express or implied, if they are supported by substantial evidence. [Citation.] We exercise our independent judgment in determining whether, on the facts presented, the search or seizure was reasonable under the Fourth Amendment.' " (*People v. Silveria and Travis* (2020) 10 Cal.5th 195, 232, quoting *People v. Lenart* (2004) 32 Cal.4th 1107, 1119; *People v. Tully* (2012) 54 Cal.4th 952, 979 [trial court's factual findings reviewed under the deferential substantial evidence standard, and reviewing court must accept trial court's resolution of disputed facts and credibility determinations].) "Accordingly, '[w]e view the evidence in a light most favorable to the order denying the motion to suppress' [citation], and '[a]ny conflicts in the evidence are resolved in favor of the superior court ruling' [citation]." (*Tully*, at p. 979.)

*1. Appellant either abandoned the gun or never had it in his possession; either way, he had no reasonable expectation of privacy subject to Fourth Amendment protection*

6

In denying the motion to suppress, the trial court found that the firearm was not recovered as a result of any search of appellant.  Rather, the gun had either been abandoned or it was never in appellant's possession, and appellant had no constitutionally protected expectation of privacy.

"The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' " (*California v. Ciraolo* (1986) 476 U.S. 207, 211; *Robey v. Superior Court* (2013) 56 Cal.4th 1218, 1224.)  " ' "An illegal search or seizure violates the federal constitutional rights only of those who have a legitimate expectation of privacy in the invaded [space] or the seized thing.  [Citation.]  The legitimate expectation of privacy must exist in the *particular area searched or thing seized* in order to bring a Fourth Amendment challenge." ' " (*People v. Carter* (2005) 36 Cal.4th 1114, 1141; *People v. Stipo* (2011) 195 Cal.App.4th 664, 668.)  In the context of a motion to suppress under the Fourth Amendment, it is the defendant's burden to establish a legitimate expectation of privacy and the prosecution's burden to demonstrate the reasonableness of the search.  (*People v. Parson* (2008) 44 Cal.4th 332, 345 (*Parson*).)  "It has long been settled, however, that a warrantless search and seizure involving abandoned property is not unlawful, because a person has no reasonable expectation of privacy in such property." (*Ibid*.; *People v. Daggs* (2005) 133 Cal.App.4th 361, 365 (*Daggs*) ["search and seizure of abandoned property is not unlawful because no one has a reasonable expectation of privacy in property that has been abandoned"].)

Whether property has been abandoned is primarily a question of intent, which is determined by objective factors—including words, acts, and other *objective* facts—not the

7

subjective intent of the defendant. (*Parson, supra*, 44 Cal.4th at p. 346; *Daggs, supra*, 133 Cal.App.4th at pp. 365–366.) " ' " 'Abandonment here is not meant in the strict property-right sense, but rests instead on whether the person so relinquished his interest in the property that he no longer retained a reasonable expectation of privacy in it at the time of the search.' " [Citations.]' [Citation.] 'The question whether property is abandoned is an issue of fact, and the court's finding must be upheld if supported by substantial evidence.' " (*Parson*, at p. 346; *Daggs,* at pp. 365–366.) "It is, of course, well established that property is abandoned when a defendant voluntarily discards it in the face of police observation, or imminent lawful detention or arrest, to avoid incrimination." (*Daggs,* at p. 365; *People v. Brown* (1990) 216 Cal.App.3d 1442, 1451 [defendant's act of dropping bag while evading police supported finding that defendant had abandoned the bag and lost any reasonable expectation of privacy in its contents]; *Hodari, supra*, 499 U.S. at pp. 623–624, 629 [drugs tossed away during police pursuit were abandoned and lawfully recovered by police]; see *Hester* v. *United States* (1924) 265 U.S. 57, 58 ["[t]he defendant's own acts . . . disclosed the [contraband]— and there was no seizure in the sense of the law when the officers examined the contents" after it had been abandoned].)

Here, even if appellant accidentally dropped the gun when he fell, he made no effort to reclaim the weapon when he got up, but continued his flight from the police. Under these circumstances, substantial evidence supports the trial court's determination that appellant had abandoned the gun and had no reasonable expectation of privacy in it subject to Fourth

Amendment protection.[2]  (See *Daggs*, *supra*, 133 Cal.App.4th at p. 367 [notwithstanding defendant's subjective reasons for not retrieving property, the failure to attempt to recover it is an objective circumstance indicating abandonment]; *In re Baraka H.* (1992) 6 Cal.App.4th 1039, 1048 [abandonment may be found even when defendant does not intend "to permanently relinquish control over the object" because it is the reasonable expectation of privacy in the property, not the object itself, that is abandoned].)

Finally, the prospect of an illegal detention does not change the analysis.  Even if appellant dropped the gun and did not seek to recover it because he was under threat of an illegal detention, the officers' recovery of the weapon did not constitute an illegal search.  "A defendant cannot immunize himself from damning evidence by discarding that evidence on his subjective assumption that an illegal search would follow his detention." (*People v. Patrick* (1982) 135 Cal.App.3d 290, 294 [rejecting argument that abandoned contraband had been discarded due to a threatened illegal detention and should be suppressed as having been obtained in violation of the Fourth Amendment].)

*2. Substantial evidence supports the trial court's implied finding that when appellant dropped the firearm he had not been "seized" by police within the meaning of the Fourth Amendment,*

---

[2] Of course, if appellant never possessed the firearm in the first instance, there could be no violation of his Fourth Amendment rights when the police recovered the weapon.  (See *Rakas v. Illinois* (1978) 439 U.S. 128, 134 [Fourth Amendment rights are personal rights, and a person aggrieved by damaging evidence obtained in a seizure of another person's property has suffered no violation of his or her Fourth Amendment rights].)

9

*and therefore recovery of the gun was not the fruit of the poisonous tree*

Appellant contends that because his encounter with Officer Bryant before the pursuit constituted an unlawful detention, the firearm appellant discarded should have been suppressed as fruit of the poisonous tree.  Appellant's claim presents the same issue the United States Supreme Court addressed in *Hodari*.  That is, whether, at the time he dropped the gun, "[appellant] had been 'seized' within the meaning of the Fourth Amendment." (*Hodari*, *supra*, 499 U.S. at p. 623.)  If so, as appellant argues, the firearm was the fruit of that seizure and the evidence of it should have been excluded.  But if not, the gun was abandoned by appellant, lawfully recovered by the police, and thus properly admitted, as discussed above.  (*Id*. at pp. 624, 629.)

As *Hodari* recognized, courts "have long understood that the Fourth Amendment's protection against 'unreasonable . . . seizures' includes seizure of the person." (*Hodari*, *supra*, 499 U.S. at p. 624.)  "A person is seized by the police and thus entitled to challenge the government's action under the Fourth Amendment when the officer, ' "by means of physical force or show of authority," ' terminates or restrains his freedom of movement, [citations], *'through means intentionally applied'* [citation]." (*Brendlin v. California* (2007) 551 U.S. 249, 254 (*Brendlin*).)  While a police officer may effect a seizure by a show of authority and without physical force, "there is no seizure without actual submission; otherwise, there is at most an attempted seizure, so far as the Fourth Amendment is concerned." (*Ibid*.)  And as the high court recently declared, "The common law distinguished the application of force from a show of authority, such as an order for a suspect to halt.  The latter does

not become an arrest unless and until the arrestee complies with the demand. As the Court explained in *Hodari D.*, '[a]n arrest requires *either* physical force . . . *or*, where that is absent, *submission* to the assertion of authority.' " (*Torres v. Madrid* (2021) ___U.S.___ [141 S.Ct. 989, 995, 209 L.Ed.2d 190, 199], quoting *Hodari*, at p. 626 (italics in original).)

In *Hodari*, upon seeing police approach, a group of juveniles took flight. (*Hodari, supra*, 499 U.S. at pp. 622–623.) One officer pursued Hodari on foot and saw him toss away what appeared to be a small rock. (*Id*. at p. 623) A moment later the officer tackled Hodari and arrested him. (*Ibid*.) The rock he had discarded was determined to be crack cocaine. (*Ibid*.) The Supreme Court held the seizure of the cocaine was lawful, despite the state's concession that the officer did not have a reasonable suspicion to stop Hodari before he fled. (*Id*. at pp. 623, fn. 1, 629.) As the high court explained, even if the officer's commands and pursuit qualified as a " 'show of authority,' " Hodari had not submitted to the officer's authority and had therefore not been seized when he dropped the cocaine. (*Id*. at pp. 626, 629.) Because Hodari did not submit to the officer's commands, he was not seized until he was tackled, and the cocaine which he abandoned in flight was not the fruit of that seizure. (*Id*. at p. 629.)

So it is in the instant case. When Officer Bryant ordered appellant to turn around and place his hands behind his back, appellant turned and immediately began to flee. Appellant clearly did not yield to Officer Bryant's show of authority for purposes of the Fourth Amendment, particularly since he had to turn away from Officer Bryant in order to run away from him. By citing *Hodari*, the trial court implicitly found that appellant

had not been "seized" in the Fourth Amendment sense because he had not been restrained by physical force nor did he submit to the police officer's authority. Substantial evidence supports the trial court's implied finding, to which we must defer. (*People v. Silveria and Travis*, *supra*, 10 Cal.5th at p. 232 [appellate court must defer to trial court's implied factual findings on a motion to suppress if they are supported by substantial evidence].)

Appellant, however, contends that as long as the officer's command would lead a reasonable person to believe that he or she was not free to leave, the encounter constitutes a detention in which the subject has been seized. (See *United States v. Mendenhall* (1980) 446 U.S. 544, 554 ["a person has been 'seized' within the meaning of the Fourth Amendment only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave"]; *People v. Jones* (1991) 228 Cal.App.3d 519, 523; *People v. Verin* (1990) 220 Cal.App.3d 551, 556.) *Hodari*, however, expressly rejected this test under the circumstances present here, in which the suspect does not yield to the police show of authority but instead runs away. (*Hodari*, *supra*, 499 U.S. at pp. 627–628 [by stating that a person has been seized "only if," and not "whenever," the so-called *Mendenhall* test merely "states a *necessary*, but not a *sufficient*, condition for seizure . . . effected through a 'show of authority' "].) The flaw in the *Mendenhall* test is that in cases where physical force is absent, it omits the requirement that the person actually submit to the show of authority in order for there to be a seizure in the context of the Fourth Amendment. (*Id*. at p. 628 [where show of authority does not result in person's acquiescence to police commands there is no seizure].)

12

Recently, our Supreme Court has also articulated the full standard for determining whether a seizure has occurred: "In situations involving a show of authority, a person is seized 'if "in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave," ' or ' "otherwise terminate the encounter" ' [citation], and *if the person actually submits to the show of authority* [citation]." (*People v. Brown* (2015) 61 Cal.4th 968, 974, italics added, quoting *Brendlin*, *supra*, 551 U.S. at pp. 254–255; *People v. Arebalos-Cabrera* (2018) 27 Cal.App.5th 179, 186.)

Deferring, as we must, to the trial court's factual findings, we conclude there was no error in the trial court's denial of the motion to suppress evidence collected from the path along which appellant ran before he was actually detained.

## II. The *Pitchess* Hearing

The trial court granted appellant's *Pitchess* motion for the discovery of personnel information of Officers Dominguez and Bryant pertaining to claims of "false reporting and dishonesty."[3] Following an in camera review of the documents, the trial court found discoverable material and ordered it be provided to trial counsel. Appellant has requested that this court independently review the sealed records of the *Pitchess* hearing to assess whether the trial court improperly withheld any discoverable material from the defense. (*People v. Landry* (2016) 2 Cal.5th 52,

---

[3] The minute order from the October 17, 2019 hearing incorrectly states that appellant's *Pitchess* motion was denied. But the reporter's transcript from the hearing reflects that the court granted the motion and conducted an in-camera review of documents produced by the custodian of records for the Los Angeles Police Department.

73 (*Landry*); *People v. Hughes* (2002) 27 Cal.4th 287, 330 (*Hughes*); *People v. Mooc* (2001) 26 Cal.4th 1216, 1228.)

"A trial court's ruling on a motion for access to law enforcement personnel records is subject to review for abuse of discretion." (*Hughes*, *supra*, 27 Cal.4th at p. 330; *Pitchess*, *supra*, 11 Cal.3d at p. 535.) We have reviewed the sealed transcript of the proceedings and conclude that the trial court did not abuse its discretion in refusing discovery on the basis of its conclusion that no materials were relevant to appellant's claims of false reporting and dishonesty by Officers Dominguez and Bryant. (*Landry*, *supra*, 2 Cal.5th at pp. 73–74; *Hughes*, at p. 330.)

**DISPOSITION**

The judgment is affirmed.

NOT TO BE PUBLISHED.


LUI, P. J.

We concur:



CHAVEZ, J.



HOFFSTADT, J.

14